UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANTOS G., § § § Plaintiff, § § v. § COMMISSIONER OF SOCIAL SECURITY, § § Defendant. § | Case # 1:20-cv-821-DB MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Plaintiff Santos G. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the Act). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 16).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 12, 13. Plaintiff also filed a reply. *See* ECF No. 14. For the reasons set forth below, Plaintiff's motion (ECF No. 12) is **DENIED,** and the Commissioner's motion (ECF No. 13) is **GRANTED.**

## BACKGROUND

Plaintiff protectively filed his DIB application on May 22, 2017, alleging disability beginning November 28, 2012 (the disability onset date), due to (among other things) pudendal nerve neuropathy, back pain, and sleep apnea. Transcript ("Tr.") 19, 210-16, 237. Plaintiff's application was denied initially on October 26, 2017, after which he requested an administrative hearing. Tr. 16. On May 30, 2019, Administrative Law Judge Melissa Lin Jones (the "ALJ")

conducted a hearing in Buffalo, New York. Tr. 16, 66-111. Plaintiff appeared and testified at the hearing and was represented by Barbara A. Sauer, an attorney. Tr. 16. Plaintiff testified with the assistance of a Spanish language interpreter. *Id*. Plaintiff's daughter, Ruth Gomez, also appeared at the hearing. *Id*. Theresa Kopitzke, an impartial vocational expert ("VE"), also appeared and testified via telephone. *Id*.

On June 19, 2019, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. Tr. 16-30. On May 6, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-9. The ALJ's June 19, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her June 19, 2019 decision:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2017;

2. The claimant has not engaged in substantial gainful activity during the period from his alleged onset date of November 28, 2012 through his last date insured of December 31, 2017 (20 CFR 404.1571 *et seq.*);

3. Through the date last insured, the claimant had the following severe impairment: pudendal nerve neuropathy (20 CFR 404.1520(c));

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. Through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except the claimant would be able to lift and/or carry 10 pounds occasionally and push and/or pull 20 pounds occasionally. The claimant can occasionally climb ramps or stairs, and occasionally stoop, kneel, and drive as part of his job duties. The claimant could occasionally operate heavy moving mechanical parts. The claimant would need to sit and stand at-will while remaining on task;

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565);

7. The claimant was born on November 19, 1963 and was 54 years old, which is defined as a younger individual age 18-49, on the date last insured. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563);

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that the claimant cold have performed (20 CFR 404.1569 and 404.1569a);

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 28, 2012, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(g)).

Tr. 16-30.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on May 22, 2017, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2017, the last date insured. Tr. 30.

## ANALYSIS

Plaintiff asserts two interrelated points of error, both of which derive from Plaintiff's objection to the ALJ's conclusion that he could perform full-time work with the imposition of an at-will sit/stand requirement. *See* ECF No. 12-1 at 12-17. Plaintiff suggests that the RFC finding lacked substantial evidence support because it did not track a particular medical opinion. *See id.* at 12-17. According to Plaintiff, the medical opinion evidence does not quantify Plaintiff's abilities to sit and stand for eight-hour workdays, and the ALJ did not explain how he arrived at the at-will sit/stand option *See id.* Plaintiff also argues that the ALJ did not properly weigh the opinion of treating neurosurgeon James Budny, M.D. ("Dr. Budny") as to the supportability of the at-will sit/stand option in the RFC. *See id.* at 17-18.

The Commissioner argues in response that the ALJ's finding that Plaintiff could perform a range of light work with a sit and stand at-will option was supported by substantial evidence, and Plaintiff's contention that the ALJ's RFC finding was unsupported because it did not mirror Dr. Budny's opinion, or any other opinion of record, is baseless. *See* ECF No. 13-1 at 21-28. Furthermore, argues the Commissioner, the ALJ properly analyzed the opinion evidence consistent with the applicable regulations and appropriately articulated how she determined the persuasiveness of the medical source opinions based on supportability and consistency. *See id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ appropriately considered the medical opinions and the other evidence of record, and her conclusion that Plaintiff could perform a range of light work with a sit and stand at-will opinion was supported by substantial evidence.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC

is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.). Furthermore, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). An ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588.

Additionally, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the

sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed his claim on May 22, 2017, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the

9

Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Plaintiff argues that the ALJ's RFC finding lacked substantial evidence support because it did not track a medical opinion. *See* ECF No. 12-1 at 12-17. However, Plaintiff's argument wrongly presumes that RFCs are medical determinations and thus, outside the ALJ's expertise. As explained above, RFC is an administrative finding, not a medical one. The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding[] that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a).

Furthermore, as discussed above, under the agency's new rules pertaining to evaluating medical opinion evidence, no opinions are entitled to any deference or specific evidentiary weight. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Instead, an ALJ need only articulate how he considered a medical opinion from a medical source by indicating how persuasive he considered a medical opinion to be. *Id*. ("The factors of supportability and consistency are the most important factors we consider when we determine how persuasive we find a medical source's medical opinion.). Accordingly, an ALJ is generally not required to explain how he considered factors other than consistency and supportability. *See id*. Contrary to Plaintiff's contentions, the ALJ in this case

properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1527, 416.927.

First, the ALJ discussed the opinion of state agency reviewing consultant C. Krist, D.O. ("Dr. Krist"), who reviewed Plaintiff's file on October 24, 2017, and opined that Plaintiff could do light work. Tr. 26, 117-18. As highlighted by the ALJ, Dr. Krist's opinion that Plaintiff could stand and/or walk for six hours a day and sit six hours a day in an eight-hour workday was consistent with Plaintiff's "minimal" examination findings. Tr. 26. For example, while Plaintiff had minimally reduced lumbar range of motion, Plaintiff also had a normal gait, negative straight leg raising test bilaterally, and full extremity strength; he required no assistance changing for examinations, rising from chair, or getting on and off an examination table; and he was neurologically intact. Tr. 26, 301, 307-08, 319, 322, 326, 329, 346, 350, 367, 380, 386, 390, 392, 394, 399, 402, 405, 408, 411, 414, 416-17, 420, 424, 426, 431, 435, 437, 441, 444, 447, 450, 453, 456, 459, 462, 468, 471, 473-74, 476-77, 479-83, 485-86, 491-92, 494-95, 500, 502, 507, 509, 511, 513, 515, 517, 519, 521, 523, 525, 531, 536, 547, 553, 547, 553, 566, 571, 577, 586, 601. The ALJ explained that although she found Dr. Krist's opinion overall was supported by the record evidence, she found the opinion "less persuasive" because Dr. Krist failed to include a sit/stand option. Tr. 26. Based on the foregoing, the ALJ reasonably discussed the supportability of Dr. Kristi's opinion and its consistency with the diagnostic evidence and clinical and examination notes. *See* 20 C.F.R. § 404.1520c(b) ("The factors of supportability and consistence are the most important factors we consider when we determine how persuasive we find a medical source's medical opinion).

The ALJ also discussed the October 5, 2017 opinion of consultative examiner Nikita Dave, M.D. ("Dr. Dave"). Tr. 305-09. The ALJ properly found that Dr. Dave's opinion that Plaintiff had

11

moderate-to-marked limitations for sitting, prolonged walking, lifting, carrying, pushing, and pulling was in excess of the doctor's own findings that Plaintiff had a normal gait, good strength throughout, and he was neurologically intact and, as such, was only somewhat persuasive. Tr. 26, 307-08. Contrary to Plaintiff's assertion (*see* ECF No. 12-1 at 15), Dr. Dave's moderate-to-marked limitations are consistent with an RFC for light work. *See, e.g.*, *Grega v. Berryhill*, No. 17-CV-6596, 2019 WL 2610793, at *10 (W.D.N.Y. June 26, 2019) (light work not inconsistent with moderate exertional limitations); *Burch v. Comm'r of Soc. Sec.*, No. 17-CV-1252, 2019 WL 922912, at *4 (W.D.N.Y. Feb. 26, 2019) (RFC for light work supported by moderate limitations for exertional activities and other substantial evidence in the record); *April B. v. Saul*, 2019 WL 4736243, *5 (N.D.N.Y. 2019) ("moderate limitations in standing and walking are consistent with light work"); *Vargas v. Astrue*, No. 10 CIV. 6306 PKC, 2011 WL 2946371, at *12 (S.D.N.Y. July 20, 2011) (finding "moderate limitations for lifting, carrying, handling objects, and climbing stairs" consistent with RFC for full range of light work).

Also, contrary to Plaintiff's assertion (*see* ECF No. 12-1 at 16), the ALJ's omission of Dr. Dave's opinion that Plaintiff could not engage in repetitive twisting or bending in the RFC is not an error. The ALJ was under no obligation to incorporate all of Dr. Dave's limitations into his RFC finding, as the ALJ has the ultimate responsibility to determine Plaintiff's RFC. *See* 20 C.F.R. § 416.927(d)(2). Furthermore, as the Commissioner points out (*see* ECF No. 13-1 at 24 n.13), the jobs identified by the VE that Plaintiff could perform do not identify repetitive twisting or bending as requirements. *See* U.S. Dictionary of Occupational Titles ("DOT") Code 211.462-010, cashier II; DOT Code 211.462-038 toll collector; and DOT Code 237.367-018 information clerk.

The ALJ also discussed the opinion of Bernard Beaupin, M.D. ("Dr. Beaupin"), who examined Plaintiff on August 10, 2015 for a "permanency evaluation." Tr. 300-03. The ALJ

properly found Dr. Beaupin's opinion that Plaintiff could occasionally sit, walk, stand, climb stairs, and reach was unpersuasive because it was not consistent with findings that Plaintiff had full muscle strength and negative straight leg raise testing bilaterally, and he was neurologically intact. Tr. 26. The ALJ also observed that Dr. Beaupin's ratings appeared to be based on Plaintiff's subjective complaints of pain rather than on his own examination findings or other objective medical evidence. *Id*. Furthermore, observed the ALJ, Dr. Beaupin's opinion that Plaintiff should avoid driving was inconsistent with Plaintiff's report that he drove a few times a week. Tr. 85, 253, 302. Plaintiff also was not limited in traveling, as the record indicates he traveled several times by airplane to the Dominican Republic during the relevant period. Tr. 22, 91-92, 317, 440.

Next, the ALJ discussed the opinion of treating neurologist Tahir Qazi, M.D. ("Dr. Qazi"). Tr. 26-27. On March 13, 2015, Dr. Qazi opined that Plaintiff was very limited in his ability to walk, stand, sit, and push/pull/bend. Tr. 604. Plaintiff could lift and carry up to 15 pounds. He had no limitations in using his right hand and was moderately limited when using his left hand (23 pounds). *Id*. The ALJ reasonably found that Dr. Qazi's opinion that Plaintiff could sit for 15 minutes at a time, was limited in standing, walking, and siting, and could lift and carry up to 15 pounds was consistent with the findings that although Plaintiff had perineal pain, he had full strength throughout and a normal gait. Tr. 27.

The ALJ also discussed the July 22, 2014 opinion of independent medical examiner John Orsini, M.D. ("Dr. Orsini"). Tr. 27, 552-55. Dr. Orsini's opinion that Plaintiff could stand on a more regular basis and sit on a limited basis also supports the ALJ's RFC finding that Plaintiff could perform light work with a sit/stand at-will option. Tr. 27, 554. *See* SSR 83-10 (light work "requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs" and "the full range of light work requires standing or walking, off and on, for a total of

approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.").

Finally, the ALJ discussed the regulations governing claims filed March 27, 2017, or later, explaining that decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) are deemed evidence that "is inherently neither valuable nor persuasive" for purposes of the ALJ's decision. Tr. 26-27. *See* 20 C.F.R. § 404.1520b(c)(1)-(3) (2017). Furthermore, as the ALJ explained, these regulations make clear that the agency will not adopt any outside ratings or provide any written analysis about how such evidence was considered. 20 C.F.R. § 404.1520b(c). *Id*. Accordingly, Dr. Qazi's statements that Plaintiff had a "total" or "permanent" disability, or that he was "unable to return to work as a truck driver" (Tr. 319, 326, 346, 351, 367) were statements on issues reserved to the Commissioner, and the ALJ was under no obligation to afford them any deference or to provide any written analysis. For the same reason, the ALJ was under no obligation to provide a written analysis about Dr. Budny's statement that Plaintiff "certainly cannot be employed in any position that requires sitting for any length of time, standing for any length of time or walking." Tr. 532.

The ALJ's at-will sit/stand requirement was also supported by the VE testimony. In response to the ALJ's hypothetical regarding whether there were jobs in the national economy that an individual possessing the same age, educational background, and past work experience as Plaintiff, and who could perform light work with the same exertional limitations as Plaintiff (including the need to sit and stand at will while remaining on task) could perform, the VE testified that the individual could perform work as a cashier, a toll collector, and an information clerk. Tr. 105-06. The ALJ then asked the VE if the same hypothetical individual could perform sedentary

14

work instead of light work, and the VE testified that the individual could perform work as a document preparer, a charge account clerk, and a telephone information clerk. Tr. 107. Thus, the ALJ properly posed hypothetical questions to the VE that encompassed all of Plaintiff's exertional limitations, including Plaintiff's need to sit and stand at will. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)) (ALJ may rely on vocational expert testimony regarding a hypothetical so long as there is substantial evidence to support the assumptions therein and they accurately reflect the claimant's limitations and capabilities); *see also Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983).

Furthermore, the ALJ offered Plaintiff's attorney an opportunity to cross-examine the VE, which the attorney declined. Tr. 109. Accordingly, Plaintiff has waived any objection to the VE's testimony with respect to the ALJ's hypothetical questions. *See, e.g., Harvey v. Astrue*, 05-CV-1094 (NAM), 2008 WL 4517809 at *15 (N.D.N.Y. Sept. 29, 2008) (finding that because "plaintiff's counsel did not challenge the basis for the vocational expert's testimony . . . [any such] objections are forfeited" for review by the district court); *see also Guzman v. Berryhill*, No. 15 CV 3920 (VB)(LMS), 2018 WL 3387319, at *22 (S.D.N.Y. June 12, 2018), *report and recommendation adopted*, No. 15 CV 3920 (VB), 2018 WL 3384444 (S.D.N.Y. July 11, 2018) (discussing several "Court[ ] of Appeals [decisions from other circuits that] have held that failure to raise an issue before the ALJ waives judicial review of the issue" (citation omitted));

As the ALJ's discussion of the evidence makes clear (Tr. 21-27), the record as a whole provides substantial evidence supporting the ALJ's RFC assessment. *Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. Sept. 29, 2016) (an ALJ looks to "all of the relevant medical and other evidence" including relevant medical reports, medical history, and statements from the claimant when assessing an applicant's RFC). Here, the record as a whole supports the ALJ's conclusion.

*See White v. Berryhill*, 753 F. App'x 80, 82 (2d Cir. Feb. 7, 2019) (finding that RFC for light work is supported by diagnostic evidence, opinion evidence showing moderate limitations, examination and treatment notes, and activities of daily living).

While Plaintiff may disagree with the ALJ's RFC finding, Plaintiff has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (The question is not whether there is substantial evidence to support the plaintiff's position, but whether there is substantial evidence to support the ALJ's decision.). The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original); *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might justifiably have reached a different result upon a *de novo* review). Plaintiff here failed to meet his burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record.

For all the reasons discussed above, the Court finds that, the ALJ properly considered the record as a whole, and her RFC determination was supported by substantial evidence, including the treatment notes, the medical opinion evidence, and the other objective clinical evidence of record. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No.12) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is **GRANTED**. Plaintiff's

Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

*[signature]*
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE